## ANNA TWIDT v. JOHN O. LARSON AND ANOTHER.[1]

May 18, 1928.

No. 26,653.

**Injury which caused death of employe did not arise out of or in course of his employment.**

The finding that the injury which caused the death of the employe did not arise out of or in the course of his employment is warranted by the record.

Workmens Compensation Acts—C. J. p. 115 n. 37.

See note in L. R. A. 1916A, 40; L. R. A. 1917D, 114; 28 R. C. L. 801; 3 R. C. L. Supp. 1596; 4 R. C. L. Supp. 1856; 5 R. C. L. Supp. 1568; 7 R. C. L. Supp. 1005.

Certiorari upon the relation of Anna Twidt and her two minor children to review an order of the industrial commission denying compensation for the death of Adolph Twidt. Affirmed.

*Converse & Converse,* for relators.

*Junell, Dorsey, Oakley & Driscoll,* for respondent John O. Larson and Ocean Accident & Guarantee Corporation, his insurer.

TAYLOR, C.

Certiorari to review the decision of the industrial commission denying compensation for the death of Adolph Twidt on the ground that the accident causing his death did not arise out of or in the course of his employment.

Adolph Twidt resided at Farmington in Dakota county. His home was two and one-half blocks east of the railroad track running north and south through the village and about the same distance south of the depot. He was struck and killed by a passenger train which left the depot at 10:16 a. m. on the morning of June 22, 1927. The accident happened at the south edge of the village near the fair grounds and about half a mile south of the depot. He was employed by John O. Larson whose business was drilling wells and who was then engaged in drilling a well on a farm some miles west of

[1]Reported in 219 N. W. 556.

Farmington. Larson, who resided at Northfield, usually drove to Farmington, picked up Twidt, and then proceeded to the farm. When he arrived at Farmington on this morning a cold drizzling rain was falling, and he told Twidt they would not work that day as they might catch cold. Twidt had a garage which he used as a workshop and in which he kept various tools. Larson had brought with him some iron pipe, a block of hardwood and some bolts and nuts. He left these materials with Twidt, who was to saw the wood into two pieces and fit and fasten them to the pipe as a block for driving purposes. Twidt finished the job except putting the nuts on the bolts. While engaged in the work a neighbor visited him to whom he said that he needed some heavy washers. The neighbor, who was a railroad section man, remarked that he could find plenty of them over at the section house. The rain ceased and the neighbor left. Little is known concerning the subsequent movements of Twidt.

C. E. Hall, who lived on the west side of the track opposite the depot, met him at the crossing north of the depot and they talked for a few minutes about a fishing trip they had been planning. Hall had picked up two washers in the road and had them in his hand. Twidt saw them and said, "That's just what I want, I'd like to have two more." Hall gave them to him and remarked that there was a box down the track where they threw rubbish and he might find two more there. Twidt said he would not like to take them from the box but might find some on the track. Hall asked if he could not get them at the hardware store. Twidt replied that they were heavier than the hardware store carried and he could get them only at the blacksmith shop. They parted and Twidt passed around the end of a box-car out of sight apparently starting down the track. Hall fixes the time of this meeting as somewhere between nine and ten o'clock.

The station agent, who was checking freight cars in the yard a short time before the arrival of the train, did not see Twidt. The mail and express agent, who was about the baggage room and platform, did not see him. Another employe, who was cleaning the track at the water tank south of the depot, did not see him.

He was next seen by Mrs. Stegmaier, who lived three blocks south of the depot and not quite two blocks east of the track. She saw him pass her house going west on the cross street toward the track. She fixes the time quite definitely at 10:10, as she saw him at the time her children left the house to go to their grandfather's and noted the time when they left. Where he went after leaving Hall does not appear. He was not seen until he passed the Stegmaier house going west on the cross street. This street extended along the south side of the block in which he lived and crossed the railroad track a block south of the section house. He was not seen again until his body was found three blocks further south near the fair grounds.

The petitioners claim that Mr. Twidt came to his death while looking for washers to be used in completing the appliance he was preparing. The defendants claim that whether he was at the place of the accident for the purpose of looking for washers or for some undisclosed purpose of his own is a matter of conjecture only; and in support of this claim urged that it was no part of his duty to procure washers, and certainly no part of his duty to see if they could be found on the railroad track or the public highways. There is no direct evidence as to his purpose in going where his body was found; that is a matter of inference only. We cannot say that the facts require a finding that he was doing an act growing out of or attributable to his employment, and consequently the finding to the contrary must stand. Engsell v. Northern Motor Co. supra, p. 362, where the cases are collected.

The order of the commission is affirmed.